Let's just wait and let everyone get settled for just a minute, plenty of time. Okay. Okay. And I'm going to let you pronounce your name because I'm sure to mess it up. So if you'll come forward and begin and give us your name. Thank you, Judge Smith. My name is Dan Jividen. Jividen. All right. Thank you. Yes, Your Honor. And may it please the Court. I represent Mr. Pena, the appellant, today, and I intend to address the reasons the District Court erred in finding Section 2K2.1A4B's compatibility requirement had been proven by a preponderance of the reliable evidence. But first, unless this Court prefers otherwise, I intend to address the separate issues related to the reasonableness of the sentence imposed, beginning with the fact that, consistent with this Court's precedents and the fair notice principles on which they rest, Mr. Pena's procedural errors, which were raised on appeal, were sufficiently preserved below. And then, I'll address why the sentence imposed by the District Court was unreasonable at both steps of the two-step process this Court undertakes when reviewing a criminal sentence. This case provides an opportunity for this Court to confirm that preservation of a sentencing error, procedural or substantive, requires fair notice, not precise words at a precise time. Fair notice has always been, and logically is, what is required to preserve errors for appeal. In the context of criminal sentencing and the reasonableness review of it, we can see, time and again, and a good illustration is when we look at a couple of the cases that were cited in the briefing, one, Mondragon v. Santiago. In that case, it was found that the procedural error had not been preserved for appeal in that case. And what is, I think, significant in that decision, you see a phrase that I think shows that there was no fair notice. And that happens time and again when it's determined that something wasn't preserved, and that phrase is, raises this argument for the first time on appeal. That certainly headlines the idea that that fair notice hasn't been there. Conversely, in another case, United States v. Bostic, this Court found that where a, an attorney had argued for a certain sentence, including arguing the 3553 factors that should be considered, and then objected after the sentence was imposed, but referenced the wrong section of the 3550, of section 3553, but this Court nonetheless found, because the argument had been made earlier, the Court had been given, the District Court had been given fair notice of the arguments that were raised on appeal. Unlike Mondragon v. Santiago, where the phrase we see is, raised for the first time on appeal, that didn't happen in the Bostic case. And that is also true in this case. The government in its response brief does not make any indication, as I understand it, that all of the arguments and positions that Mr. Pena took in his opening appellate brief weren't notified, weren't actually made below at the District Court level. Because they were. Literally. Well, assuming they're all made. I'm sorry, Your Honor? Assuming they're all made, do they, how do they succeed? How do my arguments succeed? Well, Your Honor, I'm glad. Assuming you've gotten the hurdle of preservation, which is what you've been arguing for some time, how do they, you know, it seems to be that the District Court was entitled to look at the whole thing about his gang involvement and his other criminal history, and he committed the offense while on parole. The District Court did consider the relevant things. So what is, what's your procedural and substantive error? And the answer to that is, first, the procedural error, the one clear falling under the category of procedural error was that the court selected its sentence based on clearly erroneous facts, Your Honor. And as Your Honor pointed out, we agree wholeheartedly that the court's entitled to, not entitled, the court should consider the whole, uh, 3553 factors, and in a particular case, the whole of those factors. And here's the problem, Your Honor, in court, is that the District Court didn't consider the whole. What the District Court considered, and in fact, it gave a fairly number, a fair number of pages of the transcript, is made up of the District Court's explaining exactly why it gave the sentence it gave. And it's Mr. Pena's position that when the court explained the reason it selected the sentence that it did, it meant what it said twice. All right. The clock's ticking. Yeah. And, and. Talk about clearly erroneous facts. The clearly erroneous facts were you are a member of Tango Blast and you are a drug dealer. Both of those things were said in the present tense twice. He never told any gang detectives that he was a member of Tango Blast? He did tell detectives back in 2011 that he was a member of Tango Blast or prior to that date. It was him that told them that. He also told the probation officer when asked specifically about gang membership, he's the one that said, hey, I'm a member of Tango Blast. And as he told that probation officer during the interview, and it is in the PSR, he has not been affiliated with Tango Blast or any other gang since 2014, period. There is no evidence in the record to contradict that, number one. And number two, he's the one that said it to begin with. So that's where that fact came out in the, uh, the, the PSR cites too. And now as he's explained, he's not a member anymore and he's not a drug dealer anymore. And more than just that being. District court didn't believe him. I don't think that. The district court thought he was still a, he had been a drug dealer, he had been in a gang and he says, I'm not doing it anymore. And the district court just didn't believe him. And that's within the district court's prerogative to say, you've been in this gang, you've been doing these drugs. I'm sorry. I mean, I'm not trying to beat up on your client in any way, but the district court is allowed to look at the whole, the whole situation since, you know, 2007 when he's first arrested and start there and look at his trajectory and determine that he's still in this gang and he's still a drug or has been in the relevant time period for his, for his factors, for the factors, which are, that's relevant considerations under the factors. But that's, that's the problem. That's why we do believe that this sentence is unreasonable as clearly wrong is that the district court didn't say, I don't believe you. The district court never said that the district court focused on everything that had happened in this man's life. Every single thing that the district court cited to just about every word happened on or before January 20th of 2011 that is more than a decade prior to this. And moreover, there's no basis for which one, as I stated, the district court never questioned his credibility. If you read Mr. Pena's statement, it is a very heartfelt statement. He started crying throughout this statement and it was a detailed statement, your honor, and the facts that were in that statement as well as in the PSR about things such as his employment history and the fact, let's not forget, he was released from state custody in 2014 and he was put on parole. He did not have a single parole violation the entire time. He did not have any arrests during this time. He did not pee dirty a single time. He talked during that sentencing about how he had struggled to get a plumber's license and even though he had been told no because of his criminal history, he persevered and went to a hearing. The reality is, is somebody does not live seven years of their life after release, a full decade since their prior arrest, doing all of these things if they are a gang member and a drug dealer. Nobody ever suggested that he had dealt drugs ever after that January arrest, your honor, and that's our point. The sentence that the district court imposed and the justification that it gave would have been identical and actually would have made, would have been reasonable if he had gotten released in 2014 and turned around and got arrested for this offense. That's not what happens and the last point I want to make on that reasonableness is that there was the entirety of the arguments in sentencing were related to his history, not to mention the nature of the offense and I do think that that is important in this case because this wasn't your felon in possession case where he's pulled over, he's got a firearm in the car, he gets arrested for another offense, he's got a firearm, he's running around with a firearm. No, this firearm sat in the top of a closet after somebody gave it to him and it wasn't until the ATF agents asked this bartender for the gun repeatedly that him, at that time, not having that job and having fallen off the wagon, agreed to sell it and did, but then five months later, he's back doing everything he was supposed to do. He's gainfully employed and they arrest him. Do you want to talk about your other issue? I do want to talk about the other issue, Your Honor. The government failed to prove by a preponderance of the reliable evidence that the specific firearm and specific magazine in this case were compatible as this court has explicitly held in Luna Gonzales is required for the higher base offense level. I thought there was a video of the test firing? Yes, there were two videos, Your Honor, that is correct. Address those for us. I will, Your Honor, because those two videos really help show that simple math indicates the preponderance of the evidence wasn't met. They did test number one on October 31st. At the time that they did test number one, the record reflects, according to government counsel, nothing was known about the capabilities of that firearm and all they were focused on was the capabilities of that firearm. So they go out, they test it, because Mr. Pena has objected on the basis that they're not going to work together properly. Sure enough, they go out, load the firearm, the video is watched in court, four shots go off, it jams, testing done, they left. That was it. Nothing further was done that day. That supports Mr. Pena's objection. Well, when they bring that video back to the probation officer, probation officer and the government counsel once again talk and decide, well, we've got to do another test, and this time they decide only load it with 16 rounds. It's loaded with 16 rounds because that's all we need to get this guideline, and that's what they do. One test is conducted approximately one week later. That was the second of two total tests. They put 16 rounds in and they did. They fired off. But that gives us two tests, and with two tests, 50% supported Mr. Pena's objection, 50% supported the application of the guideline. That doesn't get you to the preponderance of the evidence, and significantly, that test alone, those tests alone aren't there. In response to questioning about the reasons that the firearm may have jammed during that first test, the agent was asked whether or not, you know, the different things that might cause a jam, and he was asked, so we don't know whether it was a mechanical issue with the magazine, with the firearm, or with the two of them together, do we? Answer, we do not. That's it. I mean, he said we don't know. I wanted to ask about this because it implicates the issue about whether commentary controls under the guidelines, and there's a whole separate jurisprudence on that right now. But the guideline itself doesn't say it has to be capable of being fired. It just says it has to be compatible and fit. And so, why, it fit in both tests. Well, there's a... It fits in both tests, whether or not it's successfully fired, it's only the commentary that says anything about firing. So, do you have any comment on that? I do, Your Honor. And right now, in this circuit, Luna Gonzales controls this issue, and Luna Gonzales said the commentary is controlling on this issue, and the commentary makes clear that there is that compatibility requirement.  It means it fits. And in, though not cited in the briefs, while preparing for this oral argument, listening to the oral arguments, and Luna Gonzales, that issue came up, Your Honor. And as they pointed out, I'm trying to remember if it's in this specific case, but they do point out in a footnote, because the government conceded it would be absurd for the drafters of this guideline to care so much about the two being next to each other, either attached or in close proximity, to not care whether or not they actually work together. And that's the key, and that's the point, because if they're going to put in there it needs to be attached or in close proximity, it's because they want to prevent the dangerousness that comes with those two things being compatible and being together at the same time, Your Honor. And that's how we read Luna Gonzales. And in this particular case, we don't know. And in fact, the agent was also asked, and I can get a record cite for it, he was also asked whether that could have been the problem, whether it would have been compatible with another firearm and would have worked when filled to max capacity, and he said, we don't know. It's possible. There's no max capacity requirement. I agree that there is no max capacity requirement, Your Honor. And to be clear, I agree there's no max capacity requirement. There is a requirement that the two of them be compatible together. And in this case, we have two tests, and can I take any time to answer your question out of my rebuttal? Oh, go ahead. Go ahead and finish up. And the point is, is that we have two tests. One didn't work. We don't know, according to the agent's testimony, whether that was because these two aren't compatible together or not. Thank you. I'll reserve the remainder of my time. Yes, you've saved time for a real rebuttal, Mr. Jivitan. Thank you. Ms. Pryor? Good morning. May it please the Court. Lindsay Pryor on behalf of the United States. The District Court did not clearly err in finding that Mr. Pena sold a semi-automatic firearm capable of accepting a large capacity magazine, as defined in Section 2K2.1 of the Sentencing Guidelines. Mr. Pena admits that the extended magazine held over 15 rounds of ammunition, that it was sold with the firearm and attached to it when it was sold, and that the gun and magazine fired together when they were attached. So the District Court's finding was not only plausible, it was overwhelmingly supported by the record. Mr. Pena has also not rebutted his presumptively reasonable within guidelines sentence, and the Court should affirm it. Do you want to deal with the misfire, the issue that it didn't work once, and that therefore it means 50%, so therefore you don't make preponderance? Can you deal with that argument? Yes, Your Honor. In Luna Gonzales, the Court made clear what the compatibility requirement is and what it requires, what capable of accepting a large capacity magazine means, and it's evidence that a firearm and a magazine that could accept more than 15 rounds of ammunition were attached or in close proximity and that they actually fit, and that's what it requires. So the District Court's finding was more than reasonable given that compatibility standard. Given that the firearm and the magazine were sold together, they were attached together when they were sold, that it was clear from both test fire videos that the magazine and firearm could be attached, and that the magazine held over 15 rounds, that the ATF agent sentencing testified that he had held that firearm and that magazine together and they fit together without any issue, and again, Mr. Pena conceded that the magazine could accept over 15 rounds. So the test fire videos made it even more clear that the compatibility requirement was met here, but there was ample evidence that the two were compatible, and that's what's required under Luna Gonzales. So the Luna Gonzales standard is clear, and it was more than met here given the facts and the deferential standard of review that applies. Turning to his other procedural claims, those are subject to plain error review because he did not preserve them, but they do fail on the merits regardless of the standard of review that applies. So all Mr. Pena did was object to the general reasonableness of his sentence. He highlights that portion of the transcript on page 135 of his reply brief. He says, and I don't know if it's necessary, but we are going to object to the reasonableness of the sentence because we preserved the entire right to appeal, and that's what he said. And so the court has consistently said that the district court has to be specifically alerted to the claims of procedural error that are being raised on appeal and be given a chance to rule on it, and so the district court was not alerted to the specific claims that he's raising here, that he believes that there were clearly erroneous facts. And then the case that he relies on, Bostick, also doesn't help him on that point because in that case, the defendant did specifically object to the district court's failure to consider certain sentencing factors, but the district court did not respond to that specific objection, and so that case, it doesn't help his case here. On the merits, there was no error, let alone a clear obvious one, in the district court's characterization of Mr. Pena as a drug dealer and a gang member who traffics in drugs. Those comments were supported by the record. They were plausible, given the ample, undisputed evidence of his criminal history, and then in context, they were all made, those comments were also made as part of the district court's consideration of why I believe the 63-month within-guideline sentence was reasonable. Mr. Pena had argued that he was just someone with addiction issues, not someone who the federal firearms regulations were really meant to target, and that's when the court made its comments explaining that he did have a serious criminal history and in justification of its sentence. So the district court did explicitly consider all of the sentencing factors. It was well within its discretion to weigh his criminal history, how it felt was appropriate, and which included his 17 adult criminal convictions. And then finally, for those same reasons, Mr. Pena has not rebutted his presumptively reasonable within-guideline sentence. The district court made abundantly clear that it believed the sentence was fair and it was within the guidelines. If the court has no further questions, I will cede the remainder of my time. We ask the court to affirm. Thank you. Thank you, Ms. Pryor. Mr. Jividen for rebuttal. May it please the court. First, I'll pick up where I left off, and one of the things the government said is talking about the fit of the firearm, and the problem is, is that Luna Gonzalez's focus was on compatibility. There are times where that word fit will come in, but his focus was on compatibility because the drafter's focus on those two being together emphasizes that it was the dangerousness. And while fit might mean compatible at times, there are many illustrations of when fit isn't compatible. For example, if you put a light bulb into a socket, it might screw in and fit, but due to the wattage, it's going to blow out the second you turn that light on, which we think is somewhat analogous to what happened in that first test here. And are there ways that could additional evidence have been provided that would have gone against Mr. Pena's objection? Probably. One thing that is truly remarkable about the record in this case is that up to the point where evidence and arguments closed on the compatibility issue, the word either compatible, incompatible, or compatibility had been used 18 times at that point, all by Mr. Pena, save two instances where the probation officer was stating the basis for Mr. Pena's objection to that particular guideline. In other words, no one, I mean, nobody got up and said, agent, are these two, this specific firearm and this specific magazine, compatible, and if he said yes, why? Nobody bothered to do that, ever. The only person focusing on the compatibility was Mr. Pena, as I pointed out, or as was pointed out, excuse me, below both in the response to the addendum as well as during the hearing, and it appeared that probation and government and everybody was misperceiving Luna B. Gonzalez because everybody was worried about how many rounds can we put in this thing instead of whether the two of them work together, and we have two tests, and again, not to be the dead horse, I think, two tests, one goes one way, one goes the other, it's math. I do. The counsel says the agent said that the agent put them together, and that they fit together. The agent made a comment about, I've held the gun, and they fit together. That seems to be, you said nobody said anything about it, well, that's somebody saying something about it. And to be clear, that's where I try to point out the difference between a magazine fitting into a gun versus them actually being compatible to shoot, and I don't know, Your Honor, I will be honest, I don't know whether every time a magazine fits, it means it's compatible with the firearm, and the record doesn't tell us that, and that's the point, is that maybe that does mean compatible, but maybe it's a lot more like the light bulb example that I gave, and it's gonna stop after four shots like it did in test one, 99 times out of 100, and we don't know, that's the point, and it was on the proponent of that higher base offense level to prove by a proponent of the reliable evidence that it did. And I do want to just briefly, with the remainder of my time, go back to the reasonableness of the sentence, because I understand what the court said in this case, but what the court said when it was imposing that sentence did not correspond to the evidence that was stated and all of the things that were raised. We had an individual, somebody who, by the way, most of the things in that criminal history being pointed out were misdemeanors that took place in 2003 while he was 19 years old. That's the first two pages of her, the district court ripping into him for his criminal history, were things that happened two decades earlier. The last thing that happened before this offense was a decade earlier, and at the end of the day, for somebody who battled addiction and clearly battled it with arrest after arrest to then go seven years, complying with his probation, employed all of these things to say, you are a drug dealer, you are a member of Tango Blast, is clearly erroneous. And if the judge, it would have been one thing if the judge had said, I don't believe you, I don't think you're credible. She didn't say that. And quite frankly, I don't think the court could, and for those reasons and the others in the briefing, we ask that you only hand and vacate. Thank you. Your Honor. Thank you, Mr. Jarrett. And your case is under submission. And we noticed that your court appointed, and the court wishes to thank you for your willingness to take on the appointment and particularly for your detailed knowledge of the record. That doesn't always happen with appointed counsel, but you've done a very good job and that really helps us to decide the case. We hope you'll be willing to take other appointments in the future. The court will be in recess briefly before hearing.